1  **WILLIAM W. McGAHA, ESQ.**
   Nevada Bar #3234
2  **JOSHUA SANTERAMO, ESQ.**
   Nevada Bar #12086
3  **SCHUETZE & McGAHA, P.C.**
   601 S. Rancho Drive, Suite C-20
4  Las Vegas, Nevada  89106
   (702) 369-3225
5  Attorneys for Plaintiff

6                    **UNITED STATES DISTRICT COURT**

7                          **DISTRICT OF NEVADA**

8  TRACI L. MARTIN, an individual;           Case No:    2:16-cv-2097
9  VICKIE A. HOOD, an individual,
                                              **COMPLAINT FOR:**
10              Plaintiff,
                                              1.  Discrimination and Harassment
11 vs.                                            in Violation of of Title VII of the
                                                  Civil Rights Act;
12 INTERNATIONAL HOUSE OF
   PANCAKES, LLC, a foreign Limited          2.  Retaliation in Violation of Title
13 Liability Company; FARSHAD                     VII;
   ASHOORI, an individual; RAINBOW
14 1606, INC., a Nevada corporation, doing   3.  Discrimination and Retaliation In
   business as, IHOP; DOES I through X           Violation of NRS 613.330, et. al;
15 inclusive, and ROES CORPORATIONS
   XI through XX, inclusive,                  4.  Vicarious Liability;
16
                Defendants.                   5.  Intentional Infliction of Emotional
17                                                Distress; and

18                                            6.  Negligent Hiring, Supervision,
                                                  and/or Training of Employees
19
                                              **[DEMAND FOR JURY TRIAL]**
20

21         **COMES NOW**, Plaintiff, **TRACI MARTIN** and **VICKIE HOOD**, by and through their

22 attorneys of record, **WILLIAM W. McGAHA, ESQ.**, and **JOSHUA SANTERAMO, ESQ.**, of the

23 law offices of **SCHUETZE & McGAHA, P.C.**, and for causes of action against Defendants, and

24 each of them, allege as follows:

25 ///

26 ///

27 ///

28 ///

I.

**PARTIES**

1.     Traci L. Martin ("Plaintiff") is, and was, at all times during her employment with the Defendants, a resident of the County of Clark, State of Nevada.

2.     Vickie A. Hood ("Plaintiff") is, and was, at all times during her employment with the Defendants, a resident of the County of Clark, State of Nevada.

3.     Under information and belief, Defendant International House of Pancakes ("IHOP") is a limited liability company authorized to conduct business in the County of Clark, State of Nevada.

4.     Under information and belief, Defendant FARSHAD ASHOORI is an individual residing in Sherman Oaks, California, who owns, operates and is president of Defendant RAINBOW 1606, INC. and a unknown number of other IHOP franchise stores operating under the banner of the Dan Ashoori Group.

5.     Under information and belief, Defendant RAINBOW 1606, INC. is a Nevada corporation authorized to do business in the County of Clark, State of Nevada.   That RAINBOW 1606, INC. is owned, operated, and controlled by Defendant FARSHAD ASHOORI.

6.     Upon information and belief, and at all times relevant hereto, the identities of the Defendants named and/or fictitiously named as DOES I through X and ROES CORPORATIONS XI and XX, are all entities doing business as IHOP, FARSHAD ASHOORI, RAINBOW 1606, INC., and/or other names, and each of them were individuals, partnerships, companies, corporations, alter egos, or other entities that by reason of such relationships with Defendants, and each of them, are jointly and severally responsible and liable for the damages alleged herein.   The true names and capacities whether individual, corporate, associate or otherwise of Defendants DOES I through X and ROES CORPORATIONS XI and XX, inclusive, are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Plaintiff is informed and believes and therefore, alleges that each Defendant herein designated as a DOE or ROE is legally responsible in some manner for the events and happenings herein referred to and proximately   caused the injury and damages alleged herein.   Plaintiff is

1    informed and believes and thereon alleges that DOES I through X and ROES

2    CORPORATIONS XI and XX, inclusive, are residents and citizens of the State of Nevada or

3    are corporations doing business in the State of Nevada. Plaintiff is informed and believes and

4    thereon alleges that Defendants participated in, ratified and/or condoned the acts complained

5    of in Plaintiff's Complaint and the subject matters of this action. Therefore, Plaintiff requests

6    leave of the Court to amend this Complaint to name the Defendants specifically when their

7    true identities become known.

8                                         II.

9                          __JURISDICTION AND VENUE__

10        7.    This Court has original jurisdiction over this action pursuant to Title VII of the Civil

11   Rights Act of 1964 (as amended); 42 U.S.C. § 2000e, *et seq.*, and applicable laws cited

12   herein.  The jurisdiction of this Court is invoked to secure protection and redress deprivation

13   of rights guaranteed by federal law, which provide for injunctive relief and other relief for illegal

14   employment discrimination, harassment, and retaliation.  The amount in controversy in this

15   action exceeds the jurisdictional limits of this Court. This Court also has supplemental

16   jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

17        8.    Venue is proper in the District of Nevada pursuant to 28 U.S.C. Section 1391(b)

18   because the claimed unlawful employment practices were committed in and arose in the

19   District of Nevada , and applicable laws cited herein as the alleged discrimination and damage

20   occurred in this district and the Defendants maintains a place of business in this District.

21        9.    Plaintiff complied with all of the administrative and/or procedural requisites to file

22   suit against the Defendants under Title VII of the Civil Rights Act of 1964 (as amended); Nev.

23   Rev. Stat. § 613.330, *et seq.*; 42 U.S.C. § 2000e, *et seq.*; and applicable laws cited herein.

24        10.   Plaintiff is an "employee" of Defendants under Title VII of the Civil Rights Act of

25   1964 (as amended); Nev. Rev. Stat. § 613.330, *et seq.*; 42 U.S.C. § 2000e, *et seq.;* and

26   applicable laws, for the purposes of this action.

27        11.   Defendants, at all times pertinent, was an employer as defined by Title VII of the

28   Civil Rights Act of 1964 (as amended); Nev. Rev. Stat. § 613.330, *et seq.*; 42 U.S.C. § 2000e,

*et seq.*; and applicable laws cited herein.

III.

**FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

12.    Plaintiff repeats and re-alleges every allegation made in the paragraphs above, as though set forth fully herein.

13.    Plaintiffs were hired as servers at the RAINBOW 1606, INC. IHOP location.

14.    Plaintiffs are employees within the meaning of Title VII and the other applicable laws cited herein.

15.    Defendants are an employer within the meaning of Title VII and the other applicable laws cited herein.

16.    During 2010-2014, Defendants engaged in unlawful employment practices at Plaintiffs' store in violation of Section 703(a) of Title VII, 42 U.S.C. 2000e-2(a), and other applicable laws cited herein.

17.    On February 13, 2011, Traci Martin and Vikki Hood were sexually assaulted by former employee Steven Henderson.  Hood and Martin were in the backroom when Henderson exposed his penis and testicles to both of them.  Henderson had his hand under his apron holding something, and when he saw Hood and Martin, he lifted his apron up to expose his penis and testicles from out of his zipper. He was holding his penis in his hand and then began rubbing his testicles.  He started to laugh when he saw the shocked look on their faces and became semi-erect.  Henderson then served tables with his penis still out.  He draped the apron back over his penis and then proceeded to serve tables, including children.

18.    Henderson told Martin that he could do stuff like this because everyone was afraid of him, and if Martin told anybody, he would rape her, kill her, and dump her body in the desert.  He would kill her by slitting her throat and nobody would ever know.  This was the first time that Martin had spoken to the police about his indecent exposure, but he had exposed himself in the past to her several times and would masturbate or "play with himself." Henderson had also followed her homes several times before, and she was forced to evade

him. Henderson also owned a gun, which he kept with bullets in his car, and knives. Martin feared for her life after Henderson made threats against her and her animals, and Henderson would tell other employees (such as Maggie Khermandayan) that he was obsessed with and wanted to marry Martin.

19.    Per then investigating officers, Hood was visibly shaken by the assault and confirmed the same story as Martin. Hood has a prior history with sexual assault and being around Henderson caused her to relive many of those experiences. She has suffered severe psychological trauma as a result.

20.    Hood contends that prior to the February 13th incident, Henderson had made a number of disturbing comments to her, including that it was his "destiny to be a rapist;" he wanted to be a "serial killer;" and he would comment to her about customers he would like to rape.

21    Officers also spoke with Blanca Baca. Baca also confirmed that Henderson had exposed himself to her several times over the past six months since he was hired. Henderson had threatened her previously that if she told anyone her husband would find out and leave her.

22.    Julio Solano, GM for store 1606, had known about the issues with Henderson prior to the February 13, 2011 incident. Solano had personally heard some of Henderson's comments. He did not reprimand Henderson but went to Hugo Escobedo (Director of Operations) for advice. Escobedo did not reprimand Henderson or respond to the complaints about Henderson's behavior and his comments to other employees (i.e. killer, rapist).

23.    Zak Sawyer, assistant GM for store 1606, had also witnessed Henderson's behavior and received a number of complaints from employees and customers about him. Sawyer did not report complaints up the chain of command or reprimand Henderson's behavior.

///

24.     Henderson was convicted of indecent exposure (gross misdemeanor) as part of a plea deal, and he served 6 months in the Clark County Detention Center.  He was also required to register as a sex offender.  Under information and belief, Henderson has past convictions for indecent exposure and/or other sexually related criminal offenses. Henderson has also worked at past IHOPs (Florida) with similar behavioral problems.

25.     IHOP has a screening process for new hires, and IHOP knew or should have known of Henderson's sexual deviancies but hired him anyway.  IHOP did not conduct a background check nor contact past references in Florida against company policy to do so during the screening process.

26.     Hood and Martin filed charges for sexual harassment with the EEOC on March 29, 2011.  Particularly, Hood and Martin claim that the February 13, 2011 incident was sufficiently severe and pervasive, and highly offensive, altering the conditions of employment based upon sex.  Moreover, they had complained previously about Henderson's behavior and his harassment in the workplace, along with several other employees.

27.     On April 21, 2011, FARSHAD ASHOORI took Hood and Martin into the back office at store 1606 to discuss the EEOC charges.  He concluded that Hood and Martin were doing this to get money out of him, and said "that's never going to happen." Hood told Ashoori that she went to the EEOC to make sure that he does everything he needs to do to make sure someone like Henderson does not get hired again.  Ashoori threatened Hood saying that if she continued with the EEOC, things would get "uncomfortable."  Ashoori pressured her to drop the EEOC claim, and Hood told him that she was uncomfortable with this meeting.  She left the room crying and shaking. She told Julio Solano, the GM for the store, what had happened and then clocked out early.  The events with Ashoori have exacerbated Hood's depression over Henderson's assault and emotional trauma. Martin felt threatened by the meeting and that Ashoori was going to drive her out of the store.

///

///

28.     Martin contends that the work environment after the April 21st meeting with Ashoori became uncomfortable, as Ashoori had promised. First, Hood and Martin were asked to sign new applications regarding their employment without explanation. On May 31st, Solano informed Martin that if she got even a single complaint, he would fire her on corporate's orders. Martin saw her hours reduced from five days a week to three days a week with no explanation over the course of 2011-2013, and many of her shifts were given to new hires. Solano also wrote Martin up on August 27, 2011 for "creating a hostile work environment" that was a final warning subject to termination.  She was reprimanded for recording the workplace and conversations on her phone, which Martin claims were evidence of harassment and that she needed to record because she was being threatened by other employees over the EEOC charges. She was written up for asking employees to serve as witnesses in her case and go to the "labor board." She was also written up for taking copies of the work schedules, which she took to give to the EEOC to show that her hours were being cut. IHOP alleged she was violating company procedure, stopping the business from operating, and creating a hostile work environment.  None of her actions impeded the business, and all of her actions were in order to obtain proof and witness testimony to support her EEOC charges.  IHOP actively sought to prevent that and retaliated against her with written discipline and threats of termination.

29.     Hugo Escobedo also became critical of Martin's job performance.  On different occasions, he had tried to convince her to drop the EEOC case and would allege that customers and employees complained about her without giving any detail.  Martin also started receiving write ups, which she contends were not legitimate and retaliatory.  She had no write ups prior to the February 2011 incident.  IHOP also instituted a no cell phone policy after Martin took pictures of a penis shaped pancake made by the cooks to report to the EEOC.

30.     Additionally, Hood had reached a settlement with IHOP for an unrelated worker's compensation claim that would see her work as a hostess starting in July 2011 for $9.50 an hour at 21 hours per week from Friday to Sunday.  Hood protested that IHOP knew this

schedule conflicted with her babysitting days for her grandchildren, but she was told that this was all that was available. IHOP systematically cut her hours despite a mandate in the agreement to try and give her more hours if possible. Moreover, IHOP unilaterally cut her pay to $8.25 an hour with no explanation. Martin and Hood contend that this financial harm was in retaliation for the EEOC charges.

31.    Finally, the sexual deviant behavior did not stop at store 1606. Solano was fired for engaging in sexual relations with another store employee, Bethany Pennington, who filed sexual harassment charges against Solano for forcing her into a sexual relationship in order to maintain employment. Dan Ashoori was also engaged in a sexual relationship with Blanca Baca outside of his marriage and treated her more favorably than other employees as a result. On another occasion, several male cooks had made penis shaped pancakes with frosting semen coming out and showed them to Hood and Martin. In general, the environment was sexually charged and nothing was ever done about it. Women were called "mama, mami, groped, cornered in the walk-in by males, and were asked to get "information" on new female applicants that might want to "get it." Women who stood up for themselves saw their shifts cut and were treated unfavorably by "non-problem starting" employees, including the male cooks who would delay that server's food orders and mess them up intentionally. Women accepted the harassment because they needed jobs, and all levels of management were also engaged in sexual misconduct with employees, leaving a bad example for the other male employees to do what they wanted. Some women even tried to convince Martin that the behavior was normal and that this is just how "men act." Many employees were afraid to come forward because they were hired illegally and have had their jobs and deportation threatened.

32.    From January 13, 2013-2014, Martin wrote and faxed letters to Charles Cheng (Director of HR for Ashoori Group) for her full employee file along with written complaints she had made about Steven Henderson and Blanca Baca. At no point did Cheng reply. On January 13, 2014, Martin wrote one last letter informing Cheng that he has not responded for a year and she does not know why.

33.    On January 28, 2014, Martin was terminated by IHOP.  This was shortly after her final request for her employee file. She was not given any closing paperwork nor told that she was being terminated.  Martin showed up for work and found that she was no longer listed on the schedule, and when she tried to clock in, the system did not identify her as an employee. She waited for several hours for a manager to show up so that she could ask why she was not on the schedule.  At this time, several employees were watching her and laughing.  Martin also called HR but heard no response.   After several reductions in her work hours without explanation, IHOP removed Martin from the employee schedule without notice and constructively terminated her employment.  Martin never heard from IHOP after January 28, 2014 and ceased employment at that time.

34.    Julio Solano was also hired by another IHOP afterwards, and this led Hood and Martin to express that the Defendants were not protecting them nor did they legitimately care about sexual harassment in the workplace.

35.    IHOP has policies in its Employment Handbook proclaiming to be an equal opportunity employer and against sexual harassment and retaliation.  The handbook ensures that verbal and visually harassing conduct will be investigated and subject to reprimand, and that every employee is entitled to make these complaints free of retaliation.  IHOP also has an anti-fraternization policy.

36.    Defendants' employees, including Henderson, Ashoori, Escobedo, Cheng, and Solano all violated these policies.

37.    Steven Henderson violated these policies by sexually assaulting and threatening employees if they came forward.

38.    Julio Solano violated these policies by conditioning the terms of employment upon having a sexual relationship with him and refusing to properly report harassment up the chain of command or remedy said harassment.

///

39.     Hugo Escobedo ignored complaints and refused to reprimand alleged harassers while retaliating against employees who complained.

40.     Charles Cheng refused to respond to Martin's requests for her employee file and copies of her letters regarding the workplace harassment, attempting to impede her EEOC case.

41.     FARSHAD ASHOORI threatened Hood and Martin if they went forward with the EEOC charges and engaged in extramarital affairs with employees in violation of the Employee Handbook.

42.     Ultimately, Hood and Martin amended their EEOC charges to include retaliation (Hood - May 3, 2012; Martin - July 3, 2011) due to the threats made against them, unwarranted discipline, reduction in hours, and constructive termination in Martin's case.

43.     Under information and belief, multiple female employees for Defendants have lodged complaints of sexual harassment against Henderson, Solano, and other male employees under his supervision.

44.     Defendants knew or should have known of the sexual harassment and gender-based hostile work environment, but it failed to take prompt, corrective or remedial action.

45.     Accordingly, Defendants are liable for the sexual harassment and a gender-based hostile work environment perpetrated by its manager in violation of Title VII.

46.     The effect of the practices complained of above have deprived Plaintiff and other similarly situated females of equal employment opportunities, altered their conditions of employment and otherwise adversely affect their status as employees because of their gender in violation of Section 703(a) of Title VII, 42 U.S.C. 2000e-2(a), and other applicable laws cited herein.

47.     The unlawful employment practices complained of herein were committed intentionally.

///

48.     The unlawful employment practices complained of above were done and/or allowed to be done with malice or reckless indifference to the federally and statutorily protected rights of Plaintiff and other similarly situated female employees.

49.     Upon investigation, the Equal Employment Opportunity Commission (EEOC) found that there was reasonable cause to believe that a violation had occurred based upon sex.

50.     Plaintiff received a Notice of Right to Sue, and that the subject Complaint has been filed within 90 days of receipt of that notice.

51.     Plaintiffs have sustained substantial wage loss and other associated financial losses as a result of the above mentioned conduct.

52.     Plaintiffs have suffered severe emotional distress that requires medical treatment and potentially the use of medications.

**ALLEGATIONS REGARDING BUSINESS RELATIONSHIP BETWEEN DEFENDANTS**

53.     Under information and belief, Defendant FARSHAD ASHOORI and/or RAINBOW 1606, INC. is a franchisee of Defendant International House of Pancakes LLC, doing business as IHOP.

54.     Under information and belief, Defendants have an agreement by which Defendant FARSHAD ASHOORI and/or RAINBOW 1606, INC. is an employee, agent, joint venturer, partner, subsidiary, or other related business entity of Defendant IHOP, and Defendant IHOP has the power to exert control over Defendant FARSHAD ASHOORI and/or RAINBOW 1606, INC. day to day operations.

55.     Under information and belief, Defendant IHOP had and still has the ability to exert control over Defendant FARSHAD ASHOORI and/or RAINBOW 1606, INC.'s day to day operations by dictating the contents of its manuals and training programs, termination procedures for the franchise/business agreement, hours of operations, inspections, disciplinary procedures for employees, profit sharing and distribution, and direct involvement in complaints and claims made against Defendant FARSHAD ASHOORI and/or RAINBOW

1   1606, INC., in addition to other aspects of their business operation.

2       56.    Plaintiffs contend that the terms of the relationship between Defendants is

3   codified in a written agreement that supports the above allegations and dictates IHOP's terms

4   of control over Defendant FARSHAD ASHOORI and/or RAINBOW 1606, INC., and

5   ASHOORI's other IHOP franchise stores.

6       57.    Under information and belief, Defendants employ approximately seventy-one

7   (71) individuals in Las Vegas, Nevada and are a family restaurant chain serving breakfast,

8   lunch, and dinner.  It is believed that their employees exceed 500 people when all IHOP

9   franchisees owned and operated by FARSHAD ASHOORI in California, Nevada, and other

10   states are counted.

11   **ALTER EGO ALLEGATIONS**

12       58.    Plaintiff is informed and believes and thereon alleges that some of the

13   corporations, limited liability companies, and entities named as Defendants herein, including

14   but not limited to RAINBOW 1606, INC., and DOES I-X and ROES XI-XX, (collectively referred

15   to as the ALTER EGO CORPORATIONS) and each of them, were at all times relevant the

16   alter ego corporations of the individual Defendant FARSHAD ASHOORI by reason of the

17   following:

18       (a) Plaintiff is informed and believes and thereon alleges that said individual Defendant,

19       at all times herein mentioned, dominated, influences and controlled each of the ALTER

20       EGO CORPORATIONS and the officers thereof as well as the business, property, and

21       affairs of each said corporation under the business name of the "Dan Ashoori Group,"

22       and/or the "Ashoori Restaurant Group";

23       (b) That neither the "Dan Ashoori Group" or the "Ashoori Restaurant Group" are real

24       legal entities, and merely business names used by the individual Defendant FARSHAD

25       ASHOORI;

26       (c) Plaintiff is informed and believes and thereon alleges that, at all times herein

27       mentioned, there existed and exists now a unity of interest and ownership between

28       Defendant FARSHAD ASHOORI and each of the ALTER EGO CORPORATIONS; such

the individuality and separateness between FARSHAD ASHOORI and the ALTER EGO CORPORATIONS has ceased or never existed to begin with;

(d) Plaintiff is informed and believes and thereon alleges that, at all times since the incorporation of each ALTER EGO CORPORATION, that each has been and is now a mere shell and naked framework by which Defendant FARSHAD ASHOORI used as a conduit for his personal business, property, and affairs;

(e) Plaintiff is informed and believes and thereon alleges that, at all times herein mentioned, each of the ALTER EGO CORPORATIONS was created and continued pursuant to a plan, scheme, and device conceived and operated by Defendant FARSHAD ASHOORI, whereby the income, revenue, and profits of each of the ALTER EGO CORPORATIONS were diverted to the individual Defendant himself;

(f) Plaintiff is informed and believes and thereon alleges that, at all times herein mentioned, each of the ALTER EGO CORPORATIONS was purchased by FARSHAD ASHOORI as an individual, and then later organized by Defendant FARSHAD ASHOORI into a corporation as a device to both avoid individual liability and compartmentalize liabilities that arise through the operation of the business into individually incorporated stores, like RAINBOW 1606, INC. as a way of isolating future claimants from reaching the individual Defendant or any of his other IHOP stores;

(g) Plaintiff is informed and believes and thereon alleges that, at all times herein mentioned, that RAINBOW 1606, INC. and the ALTER EGO CORPORATIONS are financially irresponsible corporations with capitalization totally inadequate for the business in which they are engaged.  That said ALTER EGO CORPORATIONS sit in the place and stead of Defendant FARSHAD ASHOORI, who personally assumes the corporation's profits and revenues on a periodic basis;

(h) By virtue of the foregoing, adherence to the fiction of the separate corporate existence of each of the ALTER EGO CORPORATIONS would, under the circumstances, sanction a fraud and promote injustice in that Plaintiffs would be unable to realize upon any judgment in their favor.

59.     Plaintiff is informed and believes and thereon alleges that, at all times relevant hereto, Defendant FARSHAD ASHOORI and the ALTER EGO CORPORATIONS acted for each other in connection with the conduct hereinafter alleged and that each of them performed the acts complained of herein or breached the duties herein complained of as agents of each other and each is therefore fully liable for the acts of the other.

## IV.

## FIRST CAUSE OF ACTION

**(Unlawful Employment Practices: Discrimination and Harassment on the Basis of Sex and Gender Against all Defendants)**

60.     Plaintiff repeats and re-alleges every allegation made in the paragraphs above, as though set forth fully herein.

61.     Plaintiffs are female and were discriminated and harassed because of and/or on the basis of sex and gender, and thus belongs to the class of individuals protected by Title VII of the Civil Rights Act of 1964 (as amended); 42 U.S.C. § 2000e, *et seq.*; and 42 U.S. § 1981.

62.     Under the applicable laws cited herein, Defendants have the obligation to provide a workplace free of discrimination and harassment on the basis of race, sex, gender, and national origin, amongst other enumerated categories.  Plaintiffs have the same rights in every State, among other things, to the full and equal benefit of the laws and proceedings for the security of persons and property as enjoyed by all citizens, and shall, among other things, be subject to like exactions of every kind, and to no other.

63.     During the course of their employment, Plaintiffs were subjected discrimination, harassment, a hostile work environment, and differential treatment by Defendants, their employees, managements, agents, and/or representatives because of her sex as alleged in detail above.  The harassment was sexually explicit and violent in nature and included, but were not limited to: verbal harassment, witnesses exposed body parts and masturbation, and other sexual pranks that rose to the level of sufficiently pervasive and serve that it altered the conditions of employment.

64.   Defendants subjected Plaintiffs to discrimination, harassment, differential terms and conditions in their employment by reason of their sex and/or gender.  Store 1606 fostered an environment in which males could get away with sexually harassing females.

65.   Plaintiffs complained to Defendants about the repeated discrimination, harassment, differential treatment because of her sex and/or gender but Defendants ignored, neglected, failed and/or refused to address the same.

66.   Upon information and belief, other employees of the Defendants who were not women and/or otherwise not of the same protected class as Plaintiff were not subjected to the same differential treatment and mistreatment as Plaintiffs, with Plaintiffs being treated less favorable because of their sex and/or gender.

67.   Plaintiffs timely filed charges of discrimination with the Equal Employment Opportunity Commission (EEOC) against Defendants alleging discrimination based on sex/gender.

68.   The conduct of Defendants described in this Complaint constitutes unlawful discrimination in violation of Sec. 703(a) of Title VII; 42 U.S.C. § 2000e, *et seq.*; 42 U.S. § 1981.

69.   Defendants are "employer(s)" as defined in 42 U.S.C. § 2000e, *et seq.*; and covered under 42 U.S. § 1981.

70.   Defendants' policy and practice of allowing disparate terms and conditions of employment, including, but not limited to, quid quo pro terms of employment, discrimination on the basis of sex and/or gender, and hostile work environment constitutes a knowing and intentional pattern and practice of discrimination in violation of the applicable laws cited herein.

71.   As a direct and proximate result of Defendants' unlawful, discriminatory conduct, Plaintiffs suffered financial harm, lost wages, loss of earning capacity, loss of employment, and severe physical and emotional distress for which they claims compensatory and punitive damages from Defendants.  The above described acts of Defendants were intentional and done with malice or reckless indifference for Plaintiff's protected rights.

///

72.     As a further result of Defendants' above described actions, Plaintiffs have been required to obtain the services of an attorney to prosecute this action, and is therefore entitled to reasonable attorney's fees and costs.

## V.

## SECOND CAUSE OF ACTION

**(Retaliation in Violation of 42 U.S.C. Section 200e-3, and Title VII of the Civil Rights Act Sec. 704(A), Against all Defendants)**

63.     Plaintiffs repeats and re-alleges every allegation made in the paragraphs above, as though set forth fully herein.

64.     Defendants, their employees, managements, agents, and/or representatives retaliated against Plaintiffs in violation of 42 U.S.C. § 2000e-3.; and Title VII of the Civil Rights Act, Sec. 704(A) by making demeaning sexual comments, chastizing them for reporting complaints to management and the EEOC, subjecting them to unwarranted discipline, cutting their hours, and terminating Martin, in addition to other acts. This retaliation was done because of Plaintiffs' participation in and/or opposition to practices and/or actions of Defendants that were unlawful under all applicable laws cited herein.

65.     Defendants retaliated against Plaintiffs because Plaintiffs opposed that which they reasonably and in good faith believe to be unlawful discrimination and harassment in their employment, and also because Plaintiffs complained about said harassment and discrimination.

66.     As a direct and proximate result of Defendants' unlawful, discriminatory conduct, Plaintiffs suffered financial harm, lost wages, loss of earning capacity, loss of employment, and severe physical and emotional distress for which they claim compensatory and punitive damages from Defendants.

67.     The above described acts of Defendants were intentional and done with malice or reckless indifference for Plaintiffs' protected rights.

68.     Plaintiff is entitled to all legal and equitable remedies available under U.S.C. § 2000e; Title VII of the Civil Rights Act, Sec. 704(A); and 42 U.S. § 1981 as a result of the

retaliation suffered as a direct result of Defendants' conduct.

69. As a further result of Defendants' above described actions, Plaintiffs have been required to obtain the services of an attorney to prosecute this action, and is therefore entitled to reasonable attorney's fees and costs.

## VI.

## THIRD CAUSE OF ACTION

**(Discrimination, Hostile Work Environment, and Retaliation on the Basis of Sex and Gender Pursuant to NRS 613.330, et. al. against all Defendants)**

70. Plaintiff repeat and re-allege every allegation made in the paragraphs above, as though set forth fully herein.

71. The above discrimination, harassment hostile work environment and retaliatory termination by Defendants constitutes unlawful discriminatory employment practices under the Nevada Equal Employment Opportunity Act, NRS 633.310 et seq.

72. As a direct and proximate result of Defendants' discriminatory acts, Plaintiffs have suffered and shall continue to suffer financial harm, lost wages, loss of earning capacity, loss of employment, and severe physical and emotional distress for which they claim compensatory and punitive damages from Defendants.

73. As a further result of Defendants' above described actions, Plaintiffs have been required to obtain the services of an attorney to prosecute this action, and are therefore entitled to reasonable attorney's fees and costs.

## VII.

## FOURTH CAUSE OF ACTION

**(Agency Theory & Vicarious Liability Against Defendant IHOP)**

74. Plaintiffs repeat and re-allege every allegation made in the paragraphs above, as though set forth fully herein.

75. Under information and belief, Defendants have an agreement by which Defendant FARSHAD ASHOORI and/or RAINBOW 1606, INC. is an employee, agent, joint

venturer, partner, subsidiary, or other related business entity of Defendant IHOP, and Defendant IHOP has the power to exert control over Defendant FARSHAD ASHOORI and/or RAINBOW 1606, INC.'s day to day operations.

76.     Under information and belief, Defendant IHOP had and still has the ability to exert control over Defendant FARSHAD ASHOORI and/or RAINBOW 1606, INC.'s day to day operations by dictating the contents of its manuals and training programs, termination procedures for the franchise/business agreement, hours of operations, inspections, disciplinary procedures for employees, profit sharing and distribution, and direct involvement in complaints and claims made against Defendant FARSHAD ASHOORI and/or RAINBOW 1606, INC. in addition to other aspects of their business operation.

77.     Defendant IHOP is therefore vicariously liable for the actions of Defendant FARSHAD ASHOORI and/or RAINBOW 1606, INC., its employees, and agents under agency theory.

**VIII.**

**FIFTH CAUSE OF ACTION**

**(Intentional Infliction of Emotional Distress Against all Defendants)**

78.     Plaintiffs repeat and re-allege every allegation made in the paragraphs above, as though set forth fully herein.

79.     The conduct of Defendants, their agents, employees, and/or representatives, was extreme and outrageous and done for the purpose of injuring Plaintiffs.  This includes threatening their job if they continue with the EEOC and making things "uncomfortable," actively trying to suppress their ability to support EEOC charges by eliminating their cell phones from work and depriving them of access to their files and complaints, ridiculing them for complaining to management and the EEOC, and retaliating against them through adverse employment actions, such as reducing their hours and termination.

80.     The conduct of Defendants, their agents, employees, and/or representatives, was intentional, willful, malicious and outrageous, and therefore, constitutes an intentional infliction of emotional distress to Plaintiffs.  This conduct, includes but is not limited to, the

actions of Solano, Henderson,. Cheng, Ashoori, Escobedo, and other employees at the subject store Plaintiff worked at.

81.    As a direct and proximate result of Defendants' conduct, Plaintiffs suffered severe emotional distress which caused and will continue to cause the Plaintiff extreme mental and nervous pain and suffering.   Moreover, Defendants knew about Hood's particular susceptibility to harassment given past sexual assault trauma and harassed her anyway.

82.    As a direct and proximate result of Defendants' acts and conduct, Plaintiffs incurred and continue to incur loss of earnings, and loss of enjoyment of life, all to said Plaintiffs' general damages in an amount to be determined, according to proof at the time of trial.

83.    That Defendants' conduct constitutes intentional, malicious, willful and wanton acts, thereby entitling Plaintiffs to punitive damages according to proof to be determined at the time of trial.

84.    As a further result of Defendants' above described actions, Plaintiffs have been required to obtain the services of an attorney to prosecute this action, and are therefore entitled to reasonable attorney's fees and costs.

IX.

**SIXTH CAUSE OF ACTION**

**(Negligent Hiring, Supervision, and/or Training of Employees Against all Defendants)**

85.    Plaintiffs repeat and re-allege every allegation made in the paragraphs above, as though set forth fully herein.

86.    Defendants should have known of the propensity of its supervisors and its employees to cause emotional and financial injury to employees, and therefore has knowledge of their potentially harmful effect upon employees.

87.    Defendants should have been aware that its employees and supervisors are creating a situation, which places Plaintiffs in danger of having their rights violated.  Because of this awareness, Defendants should have taken protective measures to stop its employees' and supervisors' illegal conduct toward Plaintiffs, specifically in relation to the harassment/

discrimination regarding Plaintiffs' sex and gender, and the retaliatory actions taken against Plaintiffs when they attempted to assert in good faith her legal rights as described in this Complaint.

88.     Defendants knew or should have known that the conduct of its employees and supervisors, and agents might result in a violation of employee rights.  Defendants failed to institute sufficiently effective training programs, which may have identified its supervisors' and employees' illegal conduct and prevented further recurrences of discrimination and/or harassment, and may have allowed employees to file complaints about such conduct.

89.     Defendant received notice that its employees and supervisors are engaging in conduct that violates Plaintiffs' rights when they complained to their immediate supervisors (Zak Sawyer and Julio Solano) and later reported their claims to the EEOC.  Moreover, Sawyer, Hugo Escobedo, and Solano were well aware of Henderson's behavioral issues prior to February 2011 but took no action.

90.     Yet, Defendants failed to properly supervise and restrain its agents, supervisors and employees from their illegal discriminatory conduct, and then retaliated against Plaintiffs when they attempted in good faith to assert their legal rights.

91.     Defendants created an atmosphere whereby discrimination is allowed to pervade and in which the ire of its agents, supervisors and employees was raised, knew that its agents, supervisors and employees might cause emotional and financial injury to a fellow employee and thereby authorized and ratified such unlawful and tortuous discriminatory conduct toward Plaintiffs.

92.     Moreover, Defendants have standards for background checks and screening applicants that were designed to detect if an employee is unfit for work.  Henderson had past convictions related to misconduct and was fired from another IHOP in Florida for similar conduct.   IHOP did not conduct any background check or contact any references into Henderson's prior employment.  IHOP negligently violated its own hiring policies when it hired Henderson.

///

93.    As a result of each supervisor's, employee's and agent's conduct and based upon the responsibility of Defendants, Plaintiffs have suffered damages and suffered special, compensatory and punitive damages in an amount subject to proof at trial.

94.    Plaintiffs have had to engage the services of attorneys to represent them in this matter and are entitled to an award of reasonable attorney's fees.

**WHEREFORE**, Plaintiffs requests relief as follows:

1.    Back pay, front pay, benefits, liquidated damages, compensatory damages, statutory and other recoverable damages as allowed by all applicable laws cited herein;

2.    Injunctive relief prohibiting future retaliation and enjoining present discrimination;

3.    Punitive damages;

4.    Attorney's fees and costs as allowed by all applicable laws cited herein;

5.    For past and future damages in excess of $10,000.00;

6.    For past and future medical expenses; emotional and mental distress; and special damages in an amount to be proven at trial;

7.    For pre-judgment and post-judgment interests; and

8.    For such other and further relief as the Court deems proper.

**DATED** this __6__ day of September, 2016.

**SCHUETZE & McGAHA, P.C.**


By */s/Joshua Santeramo, Esq.*
　　**WILLIAM W. McGAHA, ESQ.**
　　Nevada Bar #3234
　　**JOSHUA SANTERAMO, ESQ.**
　　Nevada Bar #12086
　　601 S. Rancho Drive, Suite C-20
　　Las Vegas, Nevada  89106